<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| MICHAEL VANCE, | : | |
| Plaintiff, | : | |
|  | : | Civ. No. 06-672 (GEB) |
| v. | : | |
|  | : | **MEMORANDUM OPINION** |
| JOSEPH RIZZO, *et al.*, | : | |
| Defendants. | : | |

<u>**BROWN, Chief Judge**</u>

      This matter comes before the Court upon Defendants Mountainview Youth Correctional Facility ("MYCF"), Sergeant Johnson, Lieutenant Frisbie, Administrator Rizzo, Former Commissioner Brown, Senior Corrections Officer ("SCO") Shabbick and SCO Fowler's (collectively "State Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56. The Court decided the motion based on the parties' written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed herein, the Court grants-in-part and denies-in-part Defendants' motion.

**I.    BACKGROUND**

      Plaintiff Michael Vance ("Plaintiff") was an inmate incarcerated at MYCF. On February 14, 2006, Plaintiff brought suit against a number of defendants pursuant to 42 U.S.C. § 1983.[1] Plaintiff's

---

[1] On August 2, 2006, Plaintiff filed an Amended Complaint.

claims relate to an altercation that occurred on March 6, 2004 between Plaintiff and an inmate named Alain Carre ("Carre"). The altercation occurred at MYCF where both Plaintiff and Carre were housed at the time of the incident.

In his Complaint, Plaintiff alleges the following facts relevant to the instant motion.[2] Plaintiff and Carre were assigned to the second floor of Cottage Ten at MYCF. While reaching into his footlocker, Plaintiff alleges that Carre suddenly and violently assaulted him without provocation. (Am. Compl. ¶ 25). Plaintiff claims that Carre repeatedly kicked him, causing severe and permanent injury to his face and jaw. (*Id.* ¶ 26). SCO Shabbick and SCO Fowler were on duty at the time of the incident and were assigned to the second floor. According to Plaintiff, SCO Shabbick proceeded to go to the first floor of Cottage Ten, at which time Plaintiff asserts SCO Fowler was supposed to relieve him. (*Id.* ¶¶ 27-29). The second floor of Cottage Ten was allegedly left unattended and unsupervised for a period of time. (*Id.* ¶ 30).

Following the assault, Plaintiff alleges that he began choking on his blood for approximately ten minutes until a Code 33 was called. The code was allegedly initiated by another inmate. In response to the code, several officers and supervisors arrived. (*Id.* ¶ 32). Plaintiff was then escorted to the infirmary, where he was questioned by SCO Johnson about the incident. Plaintiff asserts that he could not respond because he was "in severe pain and badly bleeding." (*Id.* ¶ 33). According to Plaintiff, SCO Johnson subsequently filed a false incident report accusing Plaintiff of fighting with another inmate. (*Id.* ¶ 34). Plaintiff alleges that this incident report led to the filing of an institutional fighting charge against Plaintiff. (*Id.* ¶ 35).

---

[2] In the second count of his Amended Complaint, Plaintiff also asserts claims against parties relating to the medical care Plaintiff received after the altercation. These claims, however, are not at issue in the instant motion.

After examination at the infirmary at MYCF, Plaintiff was sent to Saint Francis Hospital in Trenton, New Jersey, where X-rays were taken of his face and jaw. (*Id.* ¶¶ 36-37). Plaintiff was discharged as being in a "stable" condition and returned to MYCF. Plaintiff alleges that the nursing staff at MYCF arranged for him to be transferred to University of Medicine and Dentistry of New Jersey ("UMDNJ") in Newark, New Jersey. Plaintiff claims that he learned at UMDNJ that his jaw was fractured in two places. On March 9, 2004, Plaintiff underwent surgery at UMDNJ, which resulted in the wiring of his jaw. (*Id.* ¶ 42). Plaintiff was then transferred to the infirmary at Northern State Prison in Newark, New Jersey. On March 11, 2004, Plaintiff returned to the MYCF infirmary where he remained for the following month. Plaintiff asserts that he was discharged from the infirmary in April or May of 2004, and returned to general population. (*Id.* ¶ 46). Plaintiff was subsequently released from MYCF on September 27, 2005.

## II.   DISCUSSION

### A.   Motion to Dismiss Under Rule 12(b)(6)

#### 1.   Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. *Oran v. Stafford*, 226 F.3d 275, 279 (3d Cir. 2000); *Langford v. City of Atl. City*, 235 F.3d 845, 850 (3d Cir. 2000); *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986). The Court may not dismiss a complaint unless plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985), *cert. denied*, 474 U.S.

935 (1985). Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

### 2. Section 1983 Claims Against MYCF and the Individual State Defendants in Their Official Capacities

Section 1983 of Title 42 of the United States Code authorizes a person to seek redress for a violation of his federal civil rights by a person who was acting under color of state law. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). *See also Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Plaintiff's § 1983 claims against Defendants are based on purported violations of his constitutional rights guaranteed by the Eighth Amendment. With regard to who may be sued under § 1983, the Supreme Court has concluded that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Liability under § 1983 may nonetheless be imposed upon a government official in his individual

capacity for actions performed under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In the instant case, Plaintiff has sued the individual State Defendants in both their official and individual capacities. Therefore, applying the legal principle set forth in *Will*, as a preliminary matter the Court will dismiss Plaintiff's claims against the individual State Defendants in their official capacities.

The Supreme Court has further held that suits against a State and state officials in their official capacity are barred by the Eleventh Amendment. *See Will*, 491 U.S. at 66-67; *see also Hafer*, 502 U.S. at 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."). The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. The Eleventh Amendment "has been interpreted to bar suits for monetary damages by private parties in federal court against a state or against state agencies." *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *see also West v. Keve*, 571 F.2d 158 (3d Cir. 1978). Suits may be brought, however, if the State has given its consent. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) ("for over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States").

In the present case, Defendants contend that claims against MYCF must be dismissed on Eleventh Amendment grounds because MYCF is an agency of the state. Plaintiff fails to dispute this contention in his opposition brief. Defendants further contend that the State has not given consent

to be sued. Plaintiff likewise does not dispute this contention. In addition, the Court notes that the only form of relief Plaintiff seeks against the State Defendants in its Amended Complaint are money damages. (Am. Compl. at 11-12). As such, the Court concludes that Plaintiff's claims against MYCF must likewise be dismissed because they are barred by the Eleventh Amendment.

### 3. Plaintiffs' Claims Against The Individual State Defendants In Their Individual Capacities

With regard to Plaintiff's claims against Defendants Sergeant Johnson, Lieutenant Frisbie, Administrator Rizzo, Former Commissioner Brown, SCO Shabbick and SCO Fowler in their individual capacities, Plaintiff appears to advance three theories of liability as to these Defendants. These include constitutional violations based on failure to protect, failure to train employees, and creating a custom or policy that allowed unconstitutional practices to occur. Under the standards set forth above, the Court declines to dismiss the claims against the individual defendants pursuant to Rule 12(b)(6).

The Court further notes that Defendants have framed the instant motion, in the alternative, as one for summary judgment. Summary judgment, however, is not proper at this early stage of the case. Resolution of these issues require a factual analysis which is unavailable at this time – particularly in light of the fact that no discovery has occurred. Accordingly, summary judgment is denied, without prejudice.

### III.    CONCLUSION

In light of the foregoing analysis, Defendants' motion is granted-in-part and denied-in-part. The Court grants dismissal of Plaintiff's claims against Defendants MYCF and the individual State Defendants in their official capacities.  With regard to Plaintiff's claims against the individual State Defendants in their individual capacities, however, this motion is denied.  An appropriate form of Order accompanies this Memorandum Opinion.


Dated:    September 25, 2006


    s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.